## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES WILLIAMS, individually and on behalf of others similarly situated, <br> Plaintiff, <br><br> v. <br><br> MACY'S, INC., <br> Defendant. | Case No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **Demand for Jury Trial** |

1.    Defendant Macy's, Inc. ("Macy's") sent Plaintiff repeated unsolicited automated text messages to Plaintiff's residential cell phone number for the purpose of encouraging the purchase of its products and services.

2.    Macy's sent these text message calls despite the fact that Plaintiff's phone number is (and was at the relevant time) on the National Do Not Call Registry, and Macy's continued to send text message calls despite Plaintiff's repeated "stop" requests.

3.    Macy's text messages to Plaintiff and others violated the Telephone Consumer Protection Act's National Do Not Call Registry ("DNCR") and Internal Do Not Call ("IDNC") provisions.

4.    Plaintiff seeks money damages and injunctive relief for himself and other similarly situated persons nationwide, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

### INTRODUCTION

5.    Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology also brought with it an onslaught of unsolicited robocalls, spam text messages, and

junk faxes that intrude on individual privacy and waste consumer time and money. As a result, the federal government and numerous states have enacted legislation to combat these widespread abuses. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) (noting that federal legislation – the TCPA – was enacted after Congress found that callers, "by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls").

6.     As is relevant here, the TCPA's regulations provide that "[n]o person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

7.     The TCPA also prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d).

8.     Text messages are "calls" under the TCPA. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

9.     The TCPA provides for injunctive relief and/or monetary damages, which can be trebled where the statute was "willfully or knowingly" violated.  47 U.S.C. § 227(b)(3), (c)(5).

10.     Macy's made multiple unsolicited text message calls to Plaintiff's cell phone for telemarketing purposes despite Plaintiff's number being registered with the National Do Not Call Registry, and despite Plaintiff's repeated requests that calls stop, causing Plaintiff aggravation and inconvenience. Plaintiff files this class action complaint on behalf of himself and others similarly situated nationwide, seeking relief from these illegal calling practices.

**JURISDICTION AND VENUE**

11.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims*, 565 U.S. at 372.

12.     Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2).   The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of each proposed class of at least several thousand is entitled to up to $1,500 in statutory damages for each call that violated the TCPA.  Further, Plaintiff alleges a nationwide class, which will result in at least one class member residing in a state different from Macy's.

13.     This Court has personal jurisdiction over Macy's and venue is appropriate in this District under 28 U.S.C. § 1391(a) because Macy's does business in this District, maintains multiple physical locations in this District, sent its text messages at issue to Plaintiff and others in this District for the purpose of encouraging Plaintiff and others and other Connecticut-based class members to purchase its goods and services in this District (and intended to and did generate sales of its products and services through such), and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## PARTIES

14.     Plaintiff James Williams is a natural person and a citizen of the State of Connecticut. At all relevant times, Plaintiff was the subscriber for a residential cellular telephone number that received the text message calls at issue, which is tied to a personal, non-business account. Plaintiff received all of the text message calls at issue in this District.

15.     Defendant Macy's, Inc. is a Delaware corporation headquartered at 151 West 34th Street, New York, New York 10001. Macy's regularly conducts business in person in this District, including through multiple physical locations, and online.

**FACTS**

16.　　Plaintiff's cell phone number has been on the National Do Not Call Registry since at least June 27, 2022.

17.　　Macy's has sent multiple text messages to Plaintiff's cell phone number beginning in approximately September 2022.

18.　　Some or all of the text messages Macy's sent Plaintiff were made for the purpose of encouraging the purchase of Macy's goods or services.

19.　　Some examples of the text messages Macy's sent Plaintiff – as well as some of the "stop" texts Plaintiff sent back to Macy's follow:

















 

16.     These messages were sent by Macy's. When one clicks on the link provided in one of these Macy's text messages, it connects the consumer with Macy's website, where its products and services are further advertised and available for sale.

17.     On information and belief, Macy's tracks which of its text messages result in the consumer clicking on the link, and which result in a sale.

18.     On information and belief, Macy's collects and maintains "reply" texts it receives, such as those Plaintiff sent that said "stop."

19.     Macy's has sent Plaintiff dozens of such or similar text messages.

20.     The texts Macy's sent Plaintiff were a form of communication that Macy's also sent to tens of thousands of other consumers with identical or substantially identical verbiage.

21.     Many of these Macy's text messages – including some that Plaintiff received – were identical across all call recipients. However, even where there were minute differences between

6

messages, it was the result of the sophisticated, automated nature of Macy's autodialer systems, and does not reflect that these calls were "manually" dialed. The dialing system Macy's used to placed these text message calls automatically populated generic message templates with information its system attributed to the particular phone number it intended to contact. The system then populates specific data into the template – similar to a mail merge – and automatically sends these text messages *en masse* as described below.

22.     Macy's use of a short message service (SMS) short code—e.g., 62297—further suggests that these text messages were sent using an automatic telephone dialing system, as opposed to being a traditional, manually-dialed text message call from a "regular" telephone.

23.     Macy's knew it did not have consent to send these messages: Plaintiff never gave Macy's his phone number, and Plaintiff even responded "Stop" to multiple text messages, including, for example, on December 25, 2022, January 11, 2023, and January 12, 2023. Macy's has nevertheless continued to text Plaintiff.

24.     Macy's has the ability to immediately stop text messages from being sent to those who request not to receive them, but it has failed to ensure that this occurs.

25.     Moreover, the system Macy's uses to send and receive text messages is not case-sensitive for do-not-call purposes: It knows that a text message response of "Stop", "STOP", "stop", or similar each signifies that the consumer does not want to be contacted.

26.     Similarly, the system Macy's uses to send and receive text messages can interpret other common responses – such as "END" or "CANCEL" – as do-not-call requests, too.

27.     On information and belief, Macy's logged Plaintiff's and other consumers' do-not-call requests in its systems, but Macy's nevertheless kept sending Plaintiff  and other consumers' texts. Alternatively, Macy's should have logged the requests, but failed to do so.

28.     Within the four years prior to the filing of this action, Macy's caused thousands of automated text message calls to be made to the cell phones of Plaintiff and other consumers, without the prior express consent of the called party.

29.     The Macy's texts were sent through its CallFire/EZ Texting-brand dialer or a similar system that automatically blasts thousands of text messages to individuals' cell phones, without substantial human intervention.

30.     These violations were negligent. Alternatively, Macy's made these calls to Plaintiff and the other members of the classes defined below intentionally. Macy's was well aware of the TCPA's prohibitions, but made the business decision to send these text messages in violation of the TCPA anyway.

31.     Macy's and its affiliates have been sued repeatedly for violating the TCPA. *E.g., Hashw v. Dept. Stores Nat'l Bank*, No. 0:13-cv-00727 (D. Minn. filed Mar. 29, 2013) (resulting in $12.5 million class settlement arising from debt collection robocalls related to Macy's credit card); *Hines v. FSK Bank*, No. 1:17-cv-02704 (N.D. Ga. filed July 18, 2017) (TCPA robocall case arising from debt collection as to issuer of Macy's credit card); *Caldera v. Macy's Credit and Customer Services, Inc.*, No. 2:22-cv-04116 (C.D. Cal. filed June 15, 2022) (TCPA robocall case arising from debt collection).

32.     Plaintiff and the Classes as defined below have been damaged by these calls. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the text messages.  Defendant's text messages were annoying and a nuisance, and wasted the time of Plaintiff and the Classes. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to autodialed calls).

### Class Action Allegations

33.     Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and

23(b)(3), on behalf of the following classes:

> **Internal DNC Class:** All persons within the United States to whom Macy's or
> someone on its behalf initiated more than one text message or "traditional" phone
> call within any 12-month period for the purpose of encouraging the purchase of
> goods or services, after a request to stop.

> **National DNC Class:** All persons within the United States whose cellular
> telephone number Macy's or someone on its behalf texted more than once for the
> purpose of encouraging the purchase of goods or services within any 12-month
> period, despite the phone number having been registered on the National Do Not
> Call Registry for more than 31 days, where Macy's did not have a signed, written
> agreement with the consumer stating that he or she agrees to be contacted by them
> at the phone number, and the person had been a customer of Macy's in the past 18
> months or inquired as to goods or services in the past three months or, if so, had
> not revoked consent.

34.     The Internal DNC Class and the National DNC Class are collectively referred to as

the "Classes."

35.     Based upon the automated nature of the messages at issue, it is reasonable to infer

that Macy's placed thousands such messages since the date four years prior to the filing of this

case, for each of the Classes.

36.     Common questions of law or fact exist as to all members of the Classes, which

predominate over any questions solely affecting any individual member, including Plaintiff. Such

questions common to the Classes include but are not limited to:

a.     Whether the text message calls at issue constituted "telemarketing" or "telephone

solicitations" under the TCPA;

b.     Whether Macy's had proper prior express invitation or permission to send its text

messages to Plaintiff and the National DNC Class;

c.     Whether Macy's had properly implemented do-not-call procedures meeting the

minimum standards required under 47 C.F.R. § 64.1200(d), before making text message or other marketing calls to the members of the Classes;

d.    Whether Macy's had established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's applicable do-not-call regulations; and

e.    Damages, including whether any violations were performed willfully or knowingly such that Plaintiff and the other members of the Classes are entitled to treble damages under 47 U.S.C. § 227(b)(3) or 227(c)(5).

37.    Plaintiff's claims are typical of the claims of the other members of the Classes. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the Classes are the same: Macy's violated the TCPA by sending telemarketing text message calls to each class member's phone number without permission despite a prior do-not-call request (Internal DNC Class) or the number's registration with the National Do Not Call Registry (National DNC Class).

38.    Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests that might conflict with the interests of the Classes. Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

39.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, thousands of class members in each class, such that joinder of all members is impracticable.

40.    No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

41.    Macy's has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making relief appropriate with respect to each class as a whole. Prosecution of separate actions by individual members of the Classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct.

42.    The identity of each class is, on information and belief, readily identifiable from the records of Macy's and/or its vendor(s).

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations)

43.    Plaintiff re-alleges and incorporates all foregoing allegations. Plaintiff asserts this Count I on behalf of himself and the Internal DNC Class.

44.    It is a violation of the TCPA to "initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d).

45.    The internal do-not-call policy and practices of Macy's were insufficient and/or it failed to adhere to whatever policy it had—including by failing to honor the do-not-call requests of Plaintiff and the other DNC Class members. Its calls to Plaintiff and the Internal DNC Class after they had requested no more calls therefore violated the TCPA.

11

46.     These violations were willful or knowing.

47.     As a result of Macy's violations of the TCPA's internal do-not-call rules, Plaintiff and the other members of the Internal DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

48.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

49.     To the extent a Macy's did not physically "initiate" the calling at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these text message calls made on its behalf.

50.     WHEREFORE, Plaintiff James Williams, individually and on behalf of the Internal DNC Class, respectfully requests that the Court enter judgment against Macy's for:

A.     Certification of the Internal DNC Class as alleged herein;

B.     Damages, pursuant to 47 U.S.C. § 227(c)(5);

C.     Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at preventing Macy's from violating the TCPA in the future;

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.     Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(National Do Not Call Registry Violations)**

51.     Plaintiff re-alleges and incorporates all foregoing allegations. Plaintiff asserts this Count II on behalf of himself and the National DNC Class.

52.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her landline or cellular telephone number on the

National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2), (e).

53.     Macy's violated the TCPA by initiating or causing to be initiated multiple telephone solicitations to Plaintiff and the other members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

54.     Upon information and belief, Macy's did not bother to scrub Plaintiff or the National DNC Class members' phone numbers against the Do Not Call Registry, as the TCPA required it to do.

55.     These violations were willful or knowing.

56.     As a result of Macy's violations of the TCPA's National Do Not Call Registry rule, Plaintiff and the other members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

57.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

58.     To the extent a Macy's did not physically "initiate" the calling at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these text message calls made on its behalf.

59.     WHEREFORE, Plaintiff James Williams, individually and on behalf of the National DNC Class, respectfully requests that the Court enter judgment against Macy's for:

        A.     Certification of the National DNC Class as alleged herein;

        B.     Damages, pursuant to 47 U.S.C. § 227(c)(5);

        C.     Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at preventing Macy's from violating the TCPA in the future;

D.    Costs, expenses, and attorneys' fees, to the extent permitted by law; and

E.    Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

JAMES WILLIAMS, individually and
on behalf of others similarly situated

Dated: March 9, 2023                By:    _/s/ Daniel S. Blinn_____
Daniel S. Blinn (No. 02188)
CONSUMER LAW GROUP, LLC
35 Cold Spring Rd., Suite 512
Rocky Hill, CT 06067
Telephone: (860) 571-0408
dblinn@consumerlawgroup.com

Jeffrey S. Goldenberg*
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Dr., Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
jgoldenberg@gs-legal.com

Joseph M. Lyon*
THE LYON FIRM
2754 Erie Ave.
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

Alexander H. Burke*
Daniel J. Marovitch*
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*
* pending *pro hac vice* admission

14

### Document Preservation Demand and Do-Not-Call Request

Plaintiff hereby demands that Defendant, its texting and telemarketing vendors and lead generators take affirmative steps to preserve all recordings, data, databases, call records, consent and other defense evidence, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiff, or the putative members of the Classes, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiff or the putative members of the Classes, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Plaintiff also again requests that Defendant stop calling his phone number, whether through voice calls, text message calls, or otherwise. Defendant already has Plaintiff's phone number, but to the extent it claims it does not, then Defendant should obtain such from Plaintiff's counsel.

By: _/s/ Daniel S. Blinn_